695 So.2d 691 (1997)
Darryl THOMPSON, Petitioner,
v.
STATE of Florida, Respondent.
No. 87505.
Supreme Court of Florida.
June 12, 1997.
Roy D. Wasson, Special Assistant Public Defender, Miami, for Petitioner.
Robert A. Butterworth, Attorney General and Consuelo Maingot, Assistant Attorney General, Fort Lauderdale, for Respondent.
HARDING, Justice.
We have for review Thompson v. State, 667 So.2d 470 (Fla. 3d DCA 1996), which expressly and directly conflicts with the opinion in Grinage v. State, 641 So.2d 1362 (Fla. 5th DCA 1994), approved, 656 So.2d 457 (Fla. 1995).[1] We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Thompson was charged with attempted felony murder, attempted premeditated murder, and armed robbery after he used a flash-money roll in an attempt to purchase cocaine from an informant and shot at a detective on the scene. Thompson was convicted of attempted felony murder of a law enforcement officer and of armed robbery.
On appeal, Thompson alleged the trial court erred by denying his requested jury instruction that knowledge of the victim's status as a law enforcement officer is an element of attempted murder of a law enforcement officer under section 784.07(3), Florida Statutes (1993). The Third District *692 Court of Appeal held there was no error because the statute simply provides for enhancement and does not require that the defendant had knowledge that the victim was a law enforcement officer. The decision of the district court in this case directly conflicts with the decision of the Fifth District Court of Appeal in Grinage v. State, which found that section 784.07(3) created a new substantive offense and that knowledge of the victim's status as an officer was a necessary element of that offense. Grinage, 641 So.2d at 1365. This Court granted conflict review.
The issue in this case is whether knowledge of the victim's status as a law enforcement officer is an element of attempted murder of a law enforcement officer under subsection (3) of section 784.07, Florida Statutes (1993).[2] We answer this question in the affirmative and hold that knowledge of the victim's status as a law enforcement officer is a necessary element of the offense.
The statute at issue is titled "Assault or battery of law enforcement officers, firefighters, or other specified officers: reclassification of offenses." Section 784.07(2) and (3) are relevant to our analysis, and state in pertinent part:
(2) Whenever any person is charged with knowingly committing an assault or battery upon a law enforcement officer ... engaged in the lawful performance of his duties, the offense for which the person is charged shall be reclassified as follows:....
(3) Notwithstanding the provisions of any other section, any person who is convicted of attempted murder of a law enforcement officer engaged in the lawful performance of his duty or who is convicted of attempted murder of a law enforcement officer when the motivation for such attempt was related, all or in part, to the lawful duties of the officer, shall be guilty of a life felony, punishable as provided in s. 775.0825.
It is a settled principle of statutory construction that phrases within a statute are not to be read in isolation, but rather should be construed within the context of the entire section. Roberts v. State, 685 So.2d 1277, 1279 (Fla.1996). In this instance, the legislature chose to include subsection (3) within a statute which by title addresses assault and battery. Because subsection (2) of the statute is applicable when "any person is charged with knowingly committing an assault and battery upon a law enforcement officer," if a defendant was charged under subsection (2), the prosecution would clearly have to prove the defendant knew that his victim was an officer. It would be illogical and unreasonable to require that knowledge of the officer's status is an element which must be proved to convict a defendant of battery under subsection (2) of this statute and at the same time not require proof of knowledge of the officer's status to convict the defendant of attempting to shoot an officer under subsection (3).
In addition, the language and application of the subsection at issue here implicate a knowledge requirement. As the Fifth District Court of Appeal correctly noted in Grinage, the language of subsection (3) indicates that specific intent must be established to convict because the subsection specifically addresses "attempted murder of a law enforcement officer." As Justice Overton stated in his dissent in Amlotte v. State, 456 So.2d 448, 450 (Fla.1984)arguing a position we later accepted in State v. Gray, 654 So.2d 552 (Fla.1995)when dealing with specific intent crimes, "[a] conviction for the offense of attempt has always required proof of the intent to commit the underlying crime." Amlotte, 456 So.2d at 450.
Moreover, subsection (3) addresses two possible fact patterns within a single sentence: an attempt to murder an "officer in the lawful performance of his duties" and an attempt to murder an officer where the "motivation for such attempt is related, all or in *693 part, to the lawful duties of the officer." The second part of the sentence in subsection (3) implicitly requires a factual finding that the defendant had knowledge of the victim's status, because the prosecution could not show that the motivation for the attempt was related to the officer's lawful duties unless the prosecution could also show the defendant knew the victim was an officer who had lawful duties. We find that it also would be illogical and unreasonable to require a factual finding that knowledge existed to convict under the second part of the sentence in subsection (3) and simultaneously not require a factual finding of knowledge under the first part of the same sentence which addresses any attempt against an "officer in the lawful performance of his duty."
We acknowledged in Chicone v. State, 684 So.2d 736, 742 (Fla.1996), that in the absence of a clear intent to the contrary, the more substantial the penalty for the offense, the more incongruous it would be not to require guilty knowledge. Here, attempted murder of a law enforcement officer is classified as a life felony punishable by a term of life or a term not exceeding forty years in prison, which is substantially greater than the penalty for attempted first-degree murder, which is punishable by a maximum of thirty years in prison. In light of the context and language of subsection (3), to construe it as not requiring knowledge of the victim's status as a law enforcement officer would be to ignore the basic tenet of statutory construction that courts are constrained to avoid a construction that would result in unreasonable, harsh, or absurd consequences. See, e.g., State v. Hamilton, 660 So.2d 1038, 1045 (Fla.1995). Our construction today is in accord with the rule that, where criminal statutes are susceptible to differing constructions, they must be construed in favor of the accused. See, e.g., Scates v. State, 603 So.2d 504, 505 (Fla.1992).
Whether knowledge of the officer's status did or did not exist in a particular case is a factual finding to be left to the jury. While the jury's status as fact finder implicates the notion that a substantive offense has been created under the statute, we need not reach this question to resolve the issue here.
We hold that knowledge of the victim's status as a law enforcement officer is a necessary element of the offense under section 784.07(3), Florida Statutes (1993). Accordingly, we quash the decision of the district court in part, remand for proceedings consistent with this opinion, and approve the opinion in Grinage to the extent that it concludes that knowledge is a required element of the offense at issue.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES and ANSTEAD, JJ., concur.
WELLS, J., dissents with an opinion.
WELLS, Justice, dissenting.
I dissent because I cannot agree with the majority's construction of section 784.07(3), Florida Statutes (1993). This section provides:
(3) Notwithstanding the provisions of any other section, any person who is convicted of attempted murder of a law enforcement officer engaged in the lawful performance of his duty or who is convicted of attempted murder of a law enforcement officer when the motivation for such attempt was related, all or in part, to the lawful duties of the officer, shall be guilty of a life felony, punishable as provided in s. 775.0825.
When construing a statute, legislative intent is the polestar by which courts must be guided. See Florida Birth-Related Neurological Injury Compensation Ass'n v. Florida Div. of Admin. Hearings, 686 So.2d 1349, 1354 (Fla.1997). Legislative intent is determined from the plain language of a statute. See Miele v. Prudential-Bache Securities, 656 So.2d 470, 471 (Fla.1995). Under these rules of statutory construction, the plain language of the statute does not show any legislative intent to make the defendant's knowledge of the victim's status as a law enforcement officer a necessary element of the offense. The language of this statute is plain, and it must be followed. See Grinage v. State, 641 So.2d 1362, 1369 (Fla. 5th DCA *694 1994) (Griffin, J., concurring in part, dissenting in part), approved, 656 So.2d 457 (Fla. 1995).
In reaching its contrary conclusion, the majority finds that since subdivision (2) of the statute contains a knowledge requirement, subdivision (3) should also contain such a requirement. The majority reaches this conclusion despite the absence of such a requirement in subdivision (3), and the clear prefatory language in subdivision (3) that it is to be construed notwithstanding the provisions of any other section. The majority erroneously ignores the plain language of the subdivision and judicially grafts words onto the subdivision. I would adopt Judge Nimmons' analysis in Carpentier v. State, 587 So.2d 1355, 1357 (Fla. 1st DCA 1991), review denied, 599 So.2d 654 (Fla.1992):
With respect to the offense described in alternative # 1 of the statute [that the officer was engaged in the lawful performance of his duty], it is clear that there is no vagueness insofar as any scienter requirement. The statute simply does not require that the offender have knowledge that the victim was a law enforcement officer. This is certainly not surprising. In modern day law enforcement, particularly with the high incidence of drug trafficking in today's culture, it is frequently necessary for law enforcement officers to operate undercover and to ostensibly cooperate with the criminal element. The Legislature apparently determined that one who attempts to murder an undercover officer should be dealt with as severely as one who attempts to murder a uniformed officer. Criminals know that the possibility always exists that those with whom they ply their felonious trade may be undercover police officers. On this theme, we note that the Legislature recently expressed an intent to provide law enforcement officers with the "greatest protection which can be provided through the laws of this state" because of their exposure to great risk of violence. Chapter 89-100, section 2, Laws of Florida.
I agree with this analysis and would apply the statute as written by the legislature.[3]
Even if resort to extrinsic aids were required in order to interpret this subdivision, the majority fails to address the significance of the fact that in 1995, the legislature removed this subdivision from section 784.07(3), Florida Statutes (1993), and reenacted this statute as section 775.0823, Florida Statutes (1995). See ch. 95-184, § 17, Laws of Fla. Section 775.0823, Florida Statutes, provides:
Any provision of law to the contrary notwithstanding, the Legislature does hereby provide for an increase and certainty of penalty for any person convicted of a violent offense against any law enforcement... officer ... as follows:
....
(2) For attempted murder in the first degree as described in s. 782.04(1), a sentence pursuant to the sentencing guidelines.
It is a well-established rule of statutory construction that when a statute is reenacted, the judicial construction previously placed on the statute is presumed to have been adopted in the reenactment. See Burdick v. State, 594 So.2d 267, 271 (Fla.1992). Moreover, a court may consider an amendment to a statute soon after controversies as to the interpretation of the original act arise as legislative interpretation of the original law. Lowry v. Parole and Probation Comm'n, 473 So.2d 1248, 1250 (Fla.1985). Such subsequent amendments to a statute, which serve to clarify rather than change existing law, are entitled to substantial weight in construing the earlier law. See United States v. Monroe, 943 F.2d 1007, 1016 (9th Cir.1991).
When the legislature reenacted this statute just one year after the Fifth District issued its opinion in Grinage, it was aware of the then existing conflict in respect to the construction of the statute between Grinage and Carpentier. By reenacting this statute under *695 section 775.0823, the legislature resolved this conflict in favor of the interpretation given in Carpentier. The majority should honor the legislature's clear expression on this question.
Furthermore, the majority should state whether its analysis is applicable to section 775.0823, Florida Statutes (1995), since its reasoning is dependent upon the knowledge element of section 784.07(2), Florida Statutes (1993). Additionally, the majority's analysis leaves several questions unanswered. Does the judicially drafted statute require actual knowledge or is constructive knowledge sufficient? Does the decision apply prospectively only or do all convicted under this statute get the benefit of the judicially imposed knowledge requirement? Is a defendant required to have asked for an instruction similar to the one requested by the defendant here in order to get the benefit of this interpretation of the statute?
I believe the correct and prudent course is to apply the statute as it was plainly written. Therefore, I would approve the district court's decision in this case, disapprove the opinion in Grinage on this issue, and approve Carpentier.
NOTES
[1] On the basis of our opinion in State v. Gray, 654 So.2d 552 (Fla.1995), we approved the District Court of Appeal's reversal of Grinage's conviction for attempted felony murder, because we had held that attempted felony murder was a nonexistent offense in this state. See State v. Grinage, 656 So.2d 457 (Fla. 1995).
[2] In addition to the conflict issue, Thompson alleges error in the court's failure to instruct the jury on voluntary intoxication, in the preclusion of testimony about the informant's statements, in the court's statement that it was the "American way" to want to hear a defendant testify, and in the denial of his motion for mistrial after a detective's allegedly prejudicial testimony. We resolve the conflict, but decline to address the additional issues.
[3] I also cannot agree with the majority's analysis that because attempted first-degree murder is a specific-intent crime, section 784.07(3), Florida Statutes (1993), should be read to include a knowledge requirement. Majority op. at 692. Rather, I agree with Judge Nimmons' analysis in Carpentier that the knowledge element which has been excluded relates solely to the status of the victim. Carpentier, 587 So.2d at 1357.